[Civ. No. 34082. Second Dist., Div. Two. Nov. 19, 1969.]

ANGELES R. KARNES et al., Plaintiffs and Appellants, v.
STATE DEPARTMENT OF PUBLIC HEALTH,
Defendant and Respondent;
BILL EARL POFF et al., Real Parties in Interest and Respondents.

## COUNSEL

Orloff & Wilner and Robert D. Wilner for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and William L. Zessar, Deputy Attorney General, for Defendant and Respondent.

O'Connor & Wood and Timothy M. O'Connor for Real Parties in Interest and Respondents.

## OPINION

WRIGHT, J.—This is an appeal from a judgment discharging an alternative writ and denying a petition for writ of mandamus.

### STATEMENT OF FACTS

Earl Hansen was born in Bakersfield, California, on January 8, 1925. His original birth certificate named Otto Hansen as his father and Rena Paaske as his mother. On August 21, 1926, William A. Poff married Rena Paaske, who used the last name of Hansen on the Certificate of Marriage. William A. Poff died on August 1, 1960.

On June 29, 1965, respondent's Bureau of Vital Statistics accepted for filing an affidavit to correct the birth certificate of Earl Hansen. Hansen's true name was stated to be Bill Earl Poff (hereinafter called Bill), and his father was stated to be William A. Poff (hereinafter called William). The affidavit was executed by Bill's mother, who signed under the name of Rena L. Noxon, and by a friend, Lucille E. Auborn. The affidavit could not have been executed by William by reason of his prior death. On June 30, 1965, respondent issued an amended birth certificate stating that Bill was the son of William.

Maud Julia Keuthan, sister of William, died intestate on April 19, 1965, slightly over two months before the amended birth certificate was issued. Conflicting petitions were filed for appointment of an administrator of her estate. One of the petitioners was Bill, who alleged he was a nephew of decedent. Petitions were also filed by the public administrator of Los Angeles County and by Harry H. Blake, who alleged that he was a first cousin of decedent. On October 13, 1965, at the conclusion of a rather extensive hearing, the probate court held, inter alia, that Bill Earl Poff was the natural and ligitimate child of William Andrew Poff, brother of the decedent. Bill's nominee, Willard M. Wood, was then appointed administrator of the estate. This order was subsequently affirmed on appeal.[1]

Appellants in the instant case, who allege they are first cousins of William A. Poff, filed a Petition to Determine Heirship on March 15, 1966, in the estate proceedings. This matter is still pending.

A Petition for Decree of Distribution and Discharge of Administrator was filed by the administrator in the probate court on October 5, 1967. It was denied without prejudice pending the determination of the heirship

---

[1]*Estate of Keuthan,* Court of Appeal, Second Appellate District, Division Two, 2d Civ. No. 30511 (unpublished opinion, decided on February 7, 1967).

proceeding. An attempted appeal from this ruling was subsequently dismissed.[2]

On March 15, 1968, appellants herein filed a petition for writ of mandamus seeking to compel respondent to strike Bill's amended birth certificate from its official records. The trial court held that the certificate was improperly issued under section 10440 of the Health and Safety Code, because the required affidavit was not signed by both parents of the child. The court concluded, however, that Bill was entitled to an amended birth certificate pursuant to section 10450 of the Health and Safety Code, and that it would therefore be an idle and useless act to require respondent to strike the new certificate from its records.

The real parties in interest are Bill and his mother, Rena Noxon.

## DISCUSSION

The central issue on this appeal is whether the order of October 13, 1965, issued by a judge sitting in probate, is a judicial decree within the meaning of section 10450 of the Health and Safety Code.[3]

The real parties in interest urge affirmance of the trial court on the additional grounds that sections 10400 and 10440 also entitle them to an amended birth certificate. In light of our decision on the issue involving section 10450, it is not necessary to discuss sections 10400 and 10440.

All parties concede, and we agree, that there are no cases interpreting the meaning of "judicial decree" as used in section 10450. Nevertheless, upon reviewing the proceedings which culminated in the court order of

---

[2] *Estate of Keuthan,* 268 Cal.App.2d 177 [73 Cal.Rptr. 651].

[3] All code references herein are to the Health and Safety Code. The code sections which are relevant to this appeal are as follows:

"§ 10400. Affidavit; oath. Whenever the facts are not correctly stated in any certificate of birth, death, fetal death, or marriage already registered, the person asserting that the error exists may make an affidavit under oath stating the changes necessary to make the record correct, which shall be supported by the affidavit of one other credible person having knowledge of the facts, and file it with the state or local registrar.

"§ 10440. Affidavit of parents. Whenever a child becomes legitimate by the subsequent marriage of its parents an affidavit of that fact may be filed by his parents with the State Registrar upon a form provided for that purpose.

"§ 10450. Establishment of new birth certificate. Whenever the paternity of a child has been established by judicial decree or whenever the mother and father acknowledge paternity of a child by affidavit, and upon receipt of the court report or affidavit, the State Registrar shall establish a new birth certificate for such child, and all records relating to this birth shall be handled in the manner prescribed in Article 5 of this chapter, if the original record of birth is on file in the Office of the State Registrar."

October 13, 1965, and upon reviewing the disposition of that order on appeal, we have no difficulty in concluding that it was a judicial decree which established Bill's paternity so as to entitle him to a new birth certificate.

The probate court made specific findings that William was a deceased brother of the decedent; that Bill was the child of William and Rena Noxon; that Bill was born out of wedlock and that his parents subsequently married; and that Bill was the nephew of the decedent Maud Julia Keuthan. Bill's paternity necessarily had to be established by the probate court before Bill or his nominee could be appointed administrator.

On appeal of that order, all parties agreed that "the determinative issue of fact was narrowed to the question of respondent's [Bill's] paternity, that is to say, whether or not he was the natural son of decedent's brother, William A. Poff." (*Estate of Keuthan, supra,* at p. 3.) In affirming the order, the Court of Appeal held that there was sufficient substantial evidence to support the probate court's finding that Bill was the natural son of William.

It is thus clear that Bill's paternity was established by the decree of October 13, 1965. Appellants, however, contend that the Legislature intended that the judicial decree which established paternity must be one that would be binding upon the father. There are several reasons why we must reject appellant's argument.

First, had the Legislature intended that the decree mentioned in section 10450 must stem from a paternity action between the mother and father, it could have used appropriate limiting language.

Secondly, the fact that a decree establishing paternity may not be binding on a father who is not a party to the action is not relevant here for two reasons. First, it may be necessary to establish the paternity of a child to determine legal consequences other than the right to support. For example, a determination of paternity plus legitimacy may be made by a probate court on the question of a child's right to inherit from the estate of a parent. Secondly, respondent in the instant case is in no position to question a court order establishing the paternity of a child. It must obey the mandate of section 10450 when presented with such a decree. It would be improper for respondent to look behind a decree to determine whether the alleged father would be bound by the decree.

■ Appellants also argue that the amended birth certificate, which admittedly was erroneously issued, was considered by the probate court in determining Bill's paternity. They argue that to now give validity to that

certificate on the basis of the judicial decree is a "clear example of a boot strap doctrine." There is nothing in the record to indicate that the probate court gave any weight to this certificate in reaching its decision. Even if such certificate was improperly considered, the error was clearly harmless. As stated by this court when the decree granting letters was before us on appeal, there was substantial evidence establishing Bill's paternity. There was no doubt that Rena Noxon was Bill's mother, and she testified that Bill was fathered by William. Bill himself testified that William had told him that he was his son. William married Bill's mother shortly after Bill's birth. In one of William's wills, William referred to Bill as "my son" and gave Bill preferential treatment by a bequest of numerous personal effects. It also appeared that the probate court compared the physical features of Bill with those of William as revealed in a photograph of the latter.

It is unquestioned that the issue in the probate court and the appellate court was Bill's paternity. It was clearly held in both courts that Bill was the son of William. We must therefore conclude that the order of October 13, 1965, was a judicial decree establishing the paternity of a child within the meaning of section 10450.

Even though the amended certificate originally was improperly issued, Bill is presently entitled to a birth certificate amended in the same particulars. We thus agree with the trial court in the instant case that to order respondent to strike the certificate from its records would be an idle and useless act.

The judgment is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.

A petition for a rehearing was denied December 10, 1969.